**DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| v.  ) | **Criminal Action No. 2016-0018** |
| ) | |
| **SCOTT BASS,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

**Attorneys:**
**Rhonda Williams-Henry, Esq.,**
**Alphonso G. Andrews, Esq.,**
St. Croix, U.S.V.I.
  *For the Government*

**Martial A. Webster, Esq.,**
St. Croix, U.S.V.I.
  *For Defendant*

## MEMORANDUM OPINION

**Lewis, Chief Judge**

THIS MATTER comes before the Court on "Defendant's Motion to Suppress" filed by Defendant Scott Bass ("Defendant" or "Bass") (Dkt. No. 28); the Government's "Opposition to Defendant's Motion to Suppress" (Dkt. No. 33); testimony at the suppression hearing held on January 9, 2017; and supplemental briefing filed by Defendant (Dkt. No. 52) and the Government (Dkt. No. 53), pursuant to the Court's Order entered on January 11, 2017 (Dkt. No. 49). For the following reasons, the Court will grant in part and deny in part Defendant's Motion to Suppress.

### I.   BACKGROUND AND EVIDENCE[1]

On August 19, 2016, the Government filed an Information against Defendant charging him with Providing Contraband in Prison, in violation of 18 U.S.C. § 1791(a)(1), (b)(3) (Count 1), and

---

[1] The Court bases the background factual discussion in this section on the record established at the suppression hearing. The Court provides this information solely for the purposes of this pretrial

Possession of Controlled Substance with Intent to Distribute, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(D) (Count 2). (Dkt. No. 20).[2]

On September 12, 2016, Bass filed the instant Motion to Suppress (Dkt. No. 28) with a supporting Memorandum of Law (Dkt. Nos. 29, 30). The Government filed its Opposition on October 4, 2016. (Dkt. No. 33).

At the hearing, the Government called three witnesses—Corrections Officers Shariann Gilbert, Ephraim Brewley, and Rashid Brathwaite—and introduced several exhibits. Corrections Officer ("CO") Gilbert testified that, on May 18, 2016 at about 2:30 p.m., she was at her duty station in the detention lobby area of Golden Grove Correctional Facility on St. Croix. Defendant Scott Bass entered the building to drop off property—which included two containers of Africa's Best Hair & Scalp Conditioner (referred to as hair "grease" during the hearing)—for detainee Robert James. Officer Gilbert informed Bass that inmates were allowed only one container of hair grease and returned the second container to him. She searched the first container in Bass' presence by opening it and stirring it with a pen. Finding nothing improper, she took Bass' name and contact number, and told him everything looked good.

About five to ten minutes after Bass left, CO Ephraim Brewley came to the detention area to pick up the items Bass had left for Mr. James. CO Brewley thought the hair grease container looked strange. He inserted his finger, but it did not go all the way to the bottom. He squeezed the container and the top popped off in his hand, revealing a fake bottom of the container along with

---

motion, ever mindful that Defendant Bass is presumed innocent until proven guilty. Most of the facts discussed herein are alleged, but at this stage not conceded or proven beyond a reasonable doubt to the factfinder.

[2] Prior to the filing of the Information, the Government commenced the current action by filing a Criminal Complaint on July 25, 2016. (Dkt. No. 1).

material contained in a hidden compartment. The Gang Intelligence Search Team ("GIST") was contacted to examine the material in the container. CO Brewley stated that a VIPD officer tested the items and determined that they were contraband: marijuana, heroin, and tobacco.

After CO Brewley discovered the contraband, CO Wilson, who was also in the area, called Corrections Officers Joseph and Brathwaite. The officers decided that they would ask Bass to come back to the Golden Grove facility and detain him. CO Gilbert telephoned Bass and told him to return to the facility to pick up "some stuff that Robert James could not get." Officer Gilbert saw Bass re-enter the facility; heard Officers Joseph and Brathwaite tell him to put his hands on the wall and inform him that he was being detained; and saw the officers search him. She also heard them ask Bass about the other container of hair grease. He responded that it was in the car.

CO Brathwaite testified that he was a member of GIST—the entity that conducts random cell searches and investigates illegal activity within the Golden Grove facility—as well as the evidence custodian. On May 18, 2016, he learned that a person who had just dropped off contraband in a hair grease container—Bass—had left his name and telephone number with CO Gilbert. He instructed CO Gilbert to call Bass and tell him to come back to Golden Grove because the detainee could not receive one of the items. Once Bass returned, the corrections officers told him to put his hands against the wall; told him that he was being detained for bringing in contraband; and searched him. CO Brathwaite handcuffed him. Bass asked why he was being searched, and CO Brathwaite responded that he had brought contraband into the facility. Bass asked what kind; however, the officers did not tell him.

In response to CO Brathwaite's question about the location of the second container of hair grease, Bass stated that it was in the car. Officer Brathwaite went to the vehicle, told the woman in the vehicle that Bass was being detained, and inquired as to the location of the second container

3

of hair grease. The woman gave it to him. CO Brathwaite opened the container in her presence and found contraband in a hidden compartment in the container. CO Brathwaite testified that a VIPD officer field tested the substances in both the first and second containers and determined that the substances were marijuana, heroin, and tobacco.

At the conclusion of the suppression hearing, the Court ordered supplemental briefing, directing the parties to incorporate into their legal arguments the evidence presented. (Dkt. No. 49). The Court also ordered the parties to discuss the impact of *United States v. DeSumma*, 272 F.3d 176 (3d Cir. 2001), on their respective positions. *Id.* Pursuant to the Order, the parties filed their supplemental briefing on January 27, 2017. (Dkt. Nos. 52 and 53).

## II.     DISCUSSION

Bass seeks to suppress his statement concerning the whereabouts of the second container, as well as the second container and its contents. He argues that his Fifth Amendment rights were violated when he was questioned without being given his *Miranda* warnings; that the exclusionary rule applies; and that all evidence obtained from his custodial interrogation should be suppressed.

The Government counters that Bass was subjected to a temporary and nonthreatening *Terry* stop, which does not implicate *Miranda;* that Bass was not in custody and no interrogation occurred when he responded to the question regarding the location of the second container; and that even if *Miranda* was violated, the Fourth Amendment's exclusionary rule does not apply to the introduction of nontestimonial evidence obtained as a result of voluntary statements.

As discussed below, the Court agrees with Defendant's position that he was in custody and should have been Mirandized, which therefore requires the suppression of his statement concerning the location of the second container. However, the Court rejects Defendant's position

that, as a consequence of the *Miranda* violation, the physical evidence—the second container and its contents—must also be suppressed.

### A. Applicable Legal Standards

The Fifth Amendment's Self-Incrimination Clause provides: "No person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const., amend. V. In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court held that the "prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Id.* at 444. Thus, *Miranda* warnings are required whenever a suspect has been (1) "taken into custody" and (2) subject to "interrogation" by the Government. *Steigler v. Anderson*, 496 F.2d 793, 798 (3d Cir. 1974); *United States v. Dupree*, 617 F.3d 724, 731 n.7 (3d Cir. 2010) (plurality opinion).

A suspect is "in custody" when "'there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.'" *United States v. Leese*, 176 F.3d 740, 743 (3d Cir. 1999) (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983)) (internal quotation marks omitted). An "interrogation" has been defined as "(a) conduct intentionally designed to evoke a confession, as well as (b) any conduct an officer should reasonably have foreseen would elicit an inculpatory response." *United States v. Bonner*, 469 F. App'x 119, 126 (3d Cir. 2012) (citing *Rhode Island v. Innis*, 446 U.S. 291, 301-02 (1980)).

A violation of *Miranda* does not necessarily trigger the exclusionary rule such that all evidence derived from an unMirandized statement must be suppressed. As stated in the plurality opinion in *United States v. Patane*, 542 U.S. 630 (2004):

> [T]he *Miranda* rule is a prophylactic employed to protect against violations of the Self-Incrimination Clause. The Self-Incrimination Clause, however, is not

> implicated by the admission into evidence of the physical fruit of a voluntary statement. . . . The Clause cannot be violated by the introduction of nontestimonial evidence obtained as a result of voluntary statements.

*Id.* 636-37 (Thomas, J., plurality opinion).

### B. Analysis

The issues presented here are: (1) whether Bass was "in custody" and whether he was subject to an "interrogation" as contemplated by *Miranda*; and, if so, (2) whether his statement and the physical evidence (the second container and its contents) must be suppressed as a consequence of the *Miranda* violation.

#### 1. The Applicability of *Miranda*

The initial step in determining whether a person is in custody, as contemplated by *Miranda,* "is to ascertain whether, in light of the objective circumstances of the interrogation, a reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave." *Howes v. Fields*, 565 U.S. 499, 509 (2012) (internal quotation marks and citations omitted). In order to

> determine how a suspect would have gauge[d] his freedom of movement, courts must examine all of the circumstances surrounding the interrogation. Relevant factors include the location of the questioning, its duration, statements made during the interview, the presence or absence of physical restraints during the questioning, and the release of the interviewee at the end of the questioning.

*Id.* (internal quotation marks and citations omitted); *see also United States v. Killingsworth*, 118 F. App'x 649, 651 (3d Cir. 2004) (in determining whether someone who has not been arrested is "in custody" for purposes of a *Miranda* analysis, courts consider a variety of factors including: "(1) whether the officers told the suspect he/she was under arrest or free to leave; (2) the location or physical surroundings of the interrogation; (3) the length of the interrogation; (4) whether the officers used coercive tactics such as hostile tones of voice, the display of weapons, or physical

restraint of the suspect's movement; and (5) whether the suspect voluntarily submitted to questioning.").

In assessing the totality of the circumstances here, some evidence points against a finding that Bass was in custody. For example, there was no testimony that the officers used hostile tones of voice or coercive tactics, or that they drew their weapons when they detained him; the interrogation lasted for a short period of time; and Bass appeared to be cooperative and submitted to CO Brathwaite's question about the location of the second container. The countervailing factors, however, outweigh the foregoing factors and militate in favor of a finding of custody. Bass was directed to return to Golden Grove to retrieve an item that could not be received by the detainee. Upon his arrival, Bass was told he was being detained for bringing contraband into a correctional facility—a crime. He was also handcuffed. Although he was not in a police station, he was in a correctional facility being detained by corrections officers. There is no indication that he was released at the end of the questioning. Thus, with the limitations on his freedom of movement, including being informed that he was being detained for having committed a crime, "a reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave." *Howes,* 565 U.S. at 509. Given the totality of the circumstances, the Court concludes that Bass was "in custody" for purposes of *Miranda*.[3]

---

[3] In arriving at this conclusion, the Court rejects the Government's theory that Bass was subject to a stop pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968). (Dkt. No. 33 at 4, Dkt. No. 53 at 2). Under *Terry*, "an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). "[T]he temporary and relatively nonthreatening detention involved in a traffic stop or *Terry* stop . . . does not constitute *Miranda* custody." *Maryland v. Shatzer*, 559 U.S. 98, 113 (2010) (citation omitted). The environment in which Bass found himself when he was questioned about the location of the second container—in a correctional facility; handcuffed; and informed that he was being detained for bringing contraband into the facility—is materially distinct from a "temporary and relatively nonthreatening" *Terry* detention when a person may be on a street or in a vehicle and officers stop the person because they reasonably

7

The next issue is whether Bass was subjected to an "interrogation" as contemplated by *Miranda*. Here, too, the Court answers that question in the affirmative. In *Miranda,* the Supreme Court described custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444. Having conveyed to Bass that he was being detained for bringing contraband into the facility, and having handcuffed him, the officers then asked for the whereabouts of the second container which they reasonably believed—like the first container—contained contraband. The officers should have known that if Bass told them where the second container was, he would be leading them to additional contraband. Bass' response, therefore, would serve to incriminate him. *Rhode Island v. Innis*, 446 U.S. 291, 302 (1980) ("[T]he definition of interrogation can extend only to words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response."). Thus, even though Bass was asked only one question by CO Brathwaite, his response to that question inculpated him. Under *Miranda,* "statements obtained during a custodial interrogation are inadmissible under the Fifth Amendment of our Constitution if the defendant was not informed both of the right to counsel and the right to remain silent." *United States v. Shabazz*, 564 F.3d 280, 286 (3d Cir. 2009). Because Bass was subjected to custodial interrogation and it is undisputed that he was not Mirandized prior to that interrogation, his incriminating statement as to the location of the second container will be suppressed as a violation of his Fifth Amendment rights.

---

suspect that criminal activity is afoot and want to investigate further. The officers here informed Bass that he was involved in criminal activity, and handcuffed and detained him with no apparent indication that he would be released. *See United States v. McIntosh*, 2017 WL 216697, at *8 (D.V.I. Jan. 17, 2017) (rejecting similar argument proffered by Government).

### 2. The Applicability of the Exclusionary Rule

Although Bass' statement will be excluded, the Court finds that this result does not also compel the suppression of the second container and its contents. This is because of the well-established rule that "a *Miranda* breach does not necessarily preclude the use of all evidence flowing from the infraction." *DeSumma,* 272 F.3d at 178-79.

Courts "have rejected the proposition that the fruit of the poisonous tree doctrine, which in the fourth amendment context requires the exclusion of evidence or confessions obtained as a result of a constitutional violation, extends to violations of the *Miranda* decision." *United States v. McIntosh*, 2017 WL 216697, at *7 (D.V.I. Jan. 17, 2017) (internal quotation marks omitted) (holding that the gun that police recovered as a result of voluntary statements obtained in violation of the *Miranda* rule was properly admissible); *DeSumma*, 272 F.3d at 180 ("We hold that the fruit of the poisonous tree doctrine does not apply to derivative evidence secured as a result of a voluntary statement obtained before *Miranda* warnings are issued."). Thus, the exclusionary rule only applies to suppress evidence, in a *Miranda* Fifth Amendment context, that is "derived from statements that are not only obtained in violation of the *Miranda* rule but are also obtained involuntarily." *McIntosh,* 2017 WL 216697, at *7 (citing *United States v. Jacobs*, 431 F.3d 99, 109 n.11 (3d Cir. 2005) ("While statements made by a defendant in circumstances violating . . . *Miranda* . . . are admissible for impeachment if their trustworthiness . . . satisfies legal standards, . . . *any* criminal trial use against a defendant of his *involuntary* statement is a denial of due process of law. . . ." (quoting *Mincey v. Arizona*, 437 U.S. 385, 397-98, (1978))) (quotations omitted) (emphasis in original).

A statement is involuntary "'when the suspect's will was overborne in such a way as to render his confession the product of coercion.'" *McIntosh*, 2017 WL 216697, at *7 (quoting *United*

9

*States v. Latz,* 162 F. App'x 113, 118 (3d Cir. 2005)). In evaluating whether a statement is voluntary, courts consider the totality of the circumstances and gauge "the crucial element of police coercion, the length of the interrogation, its location, its continuity, the defendant's maturity, education, physical condition, and mental health. . . [and also] the failure of the police to advise the defendant of his rights to remain silent and to have counsel present during custodial interrogation." *United States v. Swint*, 15 F.3d 286, 289 (3d Cir. 1994) (internal citations omitted) (quoting *Withrow v. Williams*, 507 U.S. 680, 693-94 (1993)). "A necessary predicate to a finding of involuntariness is coercive police activity. . . . The burden is on the Government to establish, by a preponderance of the evidence, that a challenged statement was voluntary." *Jacobs*, 431 F.3d at 108.

At the suppression hearing and in his post-hearing brief, Bass contended that his statement was involuntary, which would bring it outside of the parameters of *DeSumma,* and lead to the exclusion of the second container. Bass' claim of involuntariness, however, is conclusory, and is based solely on the fact that he was in custody. He does not examine the totality of the circumstances in assessing voluntariness. *Lam v. Kelchner*, 304 F.3d 256, 264 (3d Cir. 2002).

While admittedly there is some measure of compulsion inherent in custody itself, *cf. Innis,* 446 U.S. at 300, the totality of the circumstances here reveal no indicia of involuntariness. While Bass was handcuffed, there was no evidence that any of the corrections officers had their guns drawn, either when they detained Bass or when CO Brathwaite questioned him. There also was no evidence of the use of a hostile tone of voice by the corrections officers, threats, or the use of any other coercive tactics. The testimony also indicates that Bass was in handcuffs for only a short time before he answered the question about the whereabouts of the second container; that the questioning was very brief; and that Bass was cooperative with the officers.

Under these circumstances, nothing shows that Bass's will was "overborne in such a way as to render his [statement] the product of coercion." *Latz*, 162 F. App'x at 118 (finding that defendant's admissions were voluntary even though he was handcuffed and questioned by an officer who might have been holding a shotgun, where the officer did not point the gun at the defendant or otherwise threaten him); *see also McIntosh*, 2017 WL 216697, at *10 (finding that defendant's statement was voluntary, even though officer initially drew his firearm but then re-holstered it when defendant was on the ground; neither officer had his gun drawn when defendant was questioned; and there was no indication that either officer threatened defendant, who had been in handcuffs for less than a minute when he was questioned).

The Court thus concludes that Bass's "statement was voluntary and a voluntary statement taken in violation of *Miranda* does not require the suppression of evidence derived from the statement." *Id.* (citing *DeSumma,* 272 F.3d at 180). Accordingly, the Court will not suppress the second container and its contents—including the contraband contained therein.

### III.  CONCLUSION

Based on the foregoing, the Court finds that Bass' response to CO Brathwaite's question concerning the location of the second container of hair grease was obtained in violation of *Miranda* and will be suppressed. However, the Court finds that the second container and its contents will not be suppressed. Thus, the Court will grant in part and deny in part Defendant's Motion to Suppress. (Dkt. No. 28).

An appropriate Order accompanies this Memorandum Opinion.

Date: March 15, 2017                _____/s/_____
                                     WILMA A. LEWIS
                                     Chief Judge